Filed 7/9/24  In re M.J. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.J., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>P.W.,<br><br>Defendant and Appellant. | F087404<br><br>(Super. Ct. No. JD143586-00)<br><br>**OPINION** |

## THE COURT<sup>*</sup>

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Detjen, J. and DeSantos, J.

P.W. (mother) appeals from the juvenile court's order terminating parental rights to her now two-year-old daughter, M.J., issued at a Welfare and Institutions Code[1] section 366.26 hearing. After reviewing the juvenile court record, mother's court-appointed counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).) Mother did not file a letter, but rather filed copies of four cryptic emails, in which she appears to complain about the social worker and the judge without specifying the basis for those complaints,[2] as well as about payments she made to the court which she asserts did not go to the children, and asserts she completed all visits as she made up missed visits.

We conclude mother failed to address the termination proceedings or set forth a good cause showing that any arguable issue of reversible error arose from the termination hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

On July 13, 2022, the Kern County Department of Human Services (department) filed a dependency petition on behalf of one-month-old M.J. (daughter), which alleged daughter fell within the provisions of section 300, subdivision (j), as daughter's sister, Mo.J. (sister), had been declared a dependent under section 300, subdivision (b), in February 2022, based on mother's mental health issues that interfered with her ability to care for sister, and mother's noncompliance with taking psychotropic medication. Mother was ordered family reunification services in sister's case that included mental

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] She states: "I want to file to the judge with Cps worker that started this case with Personal C[a]pacity and Apply for The Fara Registration form against the judge for my entire case."

2.

health and psychiatric services.  The department originally recommended the baby remain in mother's custody with court-ordered services.

On July 18, 2022, the department filed a first amended petition which added the following allegations under section 300, subdivision (b):  (1) mother failed to provide adequate food for daughter, as mother was not measuring daughter's formula correctly or storing it in a manner that would prevent spoiling, and (2) mother's denial of her mental illness of schizoaffective disorder and her need for psychotropic medication placed daughter at risk of harm.  Daughter was taken into protective custody.

The department reported that maternal grandmother stated her family had Cherokee heritage and her father had Choctaw.  Mother executed an ICWA-020 form which averred she may be eligible for membership in the Cherokee and Choctaw tribes.

### The Detention, Jurisdiction, and Disposition Hearings

At the July 20, 2022 detention hearing, mother testified there was Cherokee and Choctaw heritage in her family, which she believed came from maternal grandmother, and she did not know if she had any Native American heritage from maternal grandfather. Daughter's father, T.J. (father), who was not present at the hearing as he was in state prison, told mother that he had "native" heritage, but he was not specific about it.  On the juvenile court's inquiry, maternal grandmother reported maternal great-grandmother was Cherokee, paternal grandparents were Choctaw, and maternal grandfather did not have any Native American heritage.  The juvenile court found reason to believe daughter may be an Indian child based on mother's heritage.  The juvenile court ordered that daughter be detained from mother.

In its report for the jurisdiction hearing, the department stated its record review of sister's case revealed that mother participated in two court-ordered psychological evaluations which opined mother was a good candidate for reunification services.  One of the psychologists opined mother had a mental illness, likely schizoaffective disorder, and her untreated mental health condition placed her at risk for a mental health decline.  That

3.

psychologist further opined mother's success at reunification would increase with continued psychotherapeutic interventions and psychiatric referral.

As to ICWA, the department reported about follow-up inquiries that were made of maternal family members. An ICWA inquiry was conducted in sister's case concerning Native American ancestry with the Cherokee and Choctaw tribes. Inquiries were sent to the Choctaw, Cherokee, Seminole, and Blackfeet tribes. Responses were received from eight tribes, all of which indicated sister was not eligible for membership with their tribes, and while responses were not received from two tribes, the juvenile court found on February 4, 2022, that there was no reason to believe or know sister was an Indian child and ICWA did not apply to her.

At the August 3, 2022 jurisdiction hearing, the juvenile court took judicial notice of sister's file for ICWA purposes and elevated father from alleged to biological father. An offer of proof was made as to mother's testimony and the matter was submitted on the department's reports. The juvenile court found the petition true and continued the dispositional hearing to September 14, 2022, so the department could continue with its ICWA inquiry.

On September 14, 2022, the department requested a six-week continuance of the disposition hearing to complete ICWA notice. In the department's inquiries of paternal and maternal relatives, the department obtained new information that was not available when ICWA notice and inquiry was made in sister's case, and inquiry with the tribes was ongoing. The juvenile court continued the disposition hearing to November 10, 2022.

In its report for the disposition hearing, the department reported the siblings remained in separate foster homes, but they had contact with each other during their visits with mother. The department was concerned about mother's parenting skills and ability to recall information. Despite a history of two involuntary psychiatric holds in 2021 and the psychologist's opinion that she had schizoaffective disorder, mother continued to deny having mental health issues. Mother's drug tests were negative. Mother had not

4.

completed a mental health assessment; while she claimed she was unable to do so until March 2023 because her insurance would only cover one assessment per year, that information was incorrect, and she was able to complete a new assessment upon request but had not yet done so. Mother regularly visited the girls, but during visits she continued to have difficulty making bottles of formula correctly and remembering the correct size of diapers for each child.

The department recommended that mother receive reunification services, with a recommended case plan of a parenting program, a psychological evaluation and following the assessment's recommendations, random drug tests, and visitation. As to ICWA, the department reported that based on the new information, there could be Cherokee ancestry through maternal grandfather. Inquiry was made to two other Cherokee tribes, but they responded the child was not eligible for enrollment.

At the November 10, 2022 disposition hearing, the juvenile court found there was no reason to know daughter was an Indian child and therefore ICWA did not apply. After an uncontested hearing, the juvenile court adjudged daughter a dependent, removed her from mother's custody, and ordered reunification services for mother but not father. Mother was ordered to participate in a parenting program designed for the care of infants and children, and to complete a psychological evaluation by a licensed clinician with access to the court reports and mother's previous court-ordered psychological evaluations. Mother also was ordered to submit to random drug tests.

*Six-Month Review Hearing*

The six-month review hearing was continued to July 19, 2023, after mother's attorney declared a conflict. For the review hearing, the department reported that mother successfully completed her parenting class, and the parenting educator stated that mother always turned her homework in first and participated in class. Mother gained knowledge from the class as shown by her testing at 94 percent at the conclusion of the class after

testing at 44 percent before the class began. Mother also completed a voluntary parenting/child neglect course.

Mother was participating in therapy, but she had not completed a psychological evaluation. Mother drug tested negative 14 out of 18 scheduled drug tests; she tested positive for alcohol twice and failed to appear for two tests. The social worker attempted to obtain a copy of mother's substance abuse assessment and was informed that mother did not meet the criteria for substance abuse treatment.

Mother attended all but one of her scheduled and makeup visits, and she called in advance to cancel the one missed visit. The department reported the visits were of "good quality," and all missed visits due to holidays had been made up. Excerpts from visitation logs revealed mother prepared bottles for daughter and fed her applesauce. Mother engaged with the girls by talking, singing, and reading books to them, and by playing with them. The department noted that while mother interacted appropriately with the girls, she did not appear to understand daughter's feeding cues.

The caregiver complained that mother did not put on the correct size diapers during visits. The caregiver mentioned to the social worker that mother was working multiple jobs and would not have time for daughter if she were returned to mother. The caregiver was committed to adoption.

The department recommended that mother's services be terminated. Mother continued to deny she had mental health issues that would interfere with her parenting ability, she did not always know how much formula she needed to feed daughter without specific instructions, and she used the wrong size diapers during visits and blamed maternal grandmother for purchasing the wrong size. The department was concerned that mother did not seem to completely understand how to care for daughter without assistance or guidance and would not accept any mental health diagnosis despite needing therapy and receiving medication.

On July 19, 2023, a guardian ad litem was reported for mother at the juvenile court's suggestion after a closed hearing. The matter was continued to September 6, 2023, for the guardian ad litem to prepare.

At the September 6, 2023 review hearing, the juvenile court terminated mother's reunification services and set a section 366.26 selection and implementation hearing for December 19, 2023.

### *The Section 388 Petition*

Prior to the section 366.26 hearing, mother filed a section 388 petition asking that daughter be returned to her custody with the provision of family maintenance services. Mother asserted as changed circumstances or new evidence that she was seen by a doctor on September 1, 2023, who ruled out any current psychological disorder, and when coupled with mother's completed case plan, demonstrated changes in her stability and ability to provide for and protect daughter. Mother asserted the proposed change was in daughter's best interest because mother could safely care for daughter in her home and children achieve better outcomes when they are raised by their parents. Attached to the petition was a letter from a doctor at the East Niles Community Health Center stating that mother was evaluated for a psychiatric diagnosis on September 1, 2023, and she did not currently exhibit or fit the criteria of any psychiatric or mental health disorder. The doctor further stated that mother had not reported any delusions since the cessation of marijuana use, she had not been on any medications since 2020, and she had only been hospitalized once in 2019.

The juvenile court summarily denied the petition on December 1, 2023, as it did not state a change of circumstances. The juvenile court explained the request did not address the other issues regarding mother's ability to properly care for and parent daughter.

*The Section 366.26 Hearing*

In its report for the section 366.26 hearing, the department recommended termination of parental rights and adoption as daughter's permanent plan. The department opined daughter was likely to be adopted if parental rights were terminated. The caregivers were committed to adopting daughter, who did not have any mental health conditions, behavioral issues, or major medical conditions, and it would not be difficult to find another adoptive home if the caregivers were unable to adopt given daughter's young age. The caregivers intended to maintain sibling contact.

The department reported that mother had the opportunity to visit daughter 140 times and she attended 103 documented visits. Mother was owed five visits that were missed due to staffing issues, which the department was trying to make up. The visits were enjoyable, but daughter showed minimal or no signs of distress when separating from mother when visits ended, and daughter transitioned without any issues. The department opined that while mother and daughter had a "positive visiting relationship," the mother-child relationship was minimal.

Mother did not appear at the December 19, 2023 section 366.26 hearing. Mother's attorney objected without further evidence or authorities. The juvenile court gave mother credit for the five visits missed due to staffing issues, which meant mother visited 103 out of 135 times, or about 76 percent of the time, and found mother regularly and consistently visited daughter. The juvenile court found proper notice had been given. The juvenile court found by clear and convincing evidence that daughter was likely to be adopted, terminated parental rights, and ordered adoption as daughter's permanent plan.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the

appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

At a termination hearing, the juvenile court's focus is on whether it is likely the child will be adopted and if so, to order termination of parental rights. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) If, as in this case, the child is likely to be adopted, the court must terminate parental rights unless the parent proves there is a compelling reason for finding that termination would be detrimental to the child under any of the circumstances listed in section 366.26, subdivision (c)(1)(B) (exceptions to adoption). Mother does not challenge the sufficiency of the evidence supporting the juvenile court's finding daughter is likely to be adopted. Nor does she claim the juvenile court's termination order was in error because the beneficial parent-child relationship or sibling relationship exceptions to adoption applied. While she claims she made up missed visits, she does not argue that daughter had a substantial, positive, emotional attachment to her that implied daughter would benefit from continuing the relationship, or that terminating that attachment would be detrimental to daughter even when balanced against the benefit of an adoptive home. (*In re Caden C.* (2021) 11 Cal.5th 614, 636–637.) We conclude mother fails to show good cause that these issues merit additional briefing.

Having reviewed mother's filing, we find she has not made a showing of good cause that an arguable issue exists. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 846.) While she complains about the judge and social worker, as well as payments made to the court, she does not furnish a valid argument with supporting legal authorities for any purported claims of error (see *In re Sade C.*, *supra*, 13 Cal.4th at p. 994 [parents must " 'present argument and authority on each point made' "]), or show her claims, if true, constitute a basis for reversing the underlying orders. Our review of the challenged orders confirms counsel's determination that no arguable issues exist.

In sum, mother has not raised any arguable issues stemming from the section 366.26 hearing. Further, though we are not required to, we have reviewed the

record as it relates to the hearing under section 366.26, and we have found no arguable issues for briefing.  (*Phoenix H.*, *supra*, 47 Cal.4th at pp. 841–842.)  Accordingly, we dismiss the appeal.

## **<u>DISPOSITION</u>**

This appeal is dismissed.